E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Environmental Crimes & Consumer Protection Section
Assistant United States Attorney
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0304
     Facsimile: (213) 894-0141
     E-mail:    Juan.rodriguez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-152-FMO |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT SEMAJ RUFUS HALL |
| v. | |
| SEMAJ RUFUS HALL, | Hearing Date: April 11, 2024<br>Hearing Time: 3:00 p.m.<br>Location:    Courtroom of the Hon. Fernando M. Olguin |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Juan M. Rodriguez, hereby files its sentencing position for defendant Semaj Rufus Hall.

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the

//
//
//

Presentence Investigation Report, the United States Probation and Pretrial Services Office's Recommendation Letter, and such further evidence and argument as the Court may permit.

Dated: March 25, 2024　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　E. MARTIN ESTRADA
　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　MACK E. JENKINS
　　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　Chief, Criminal Division


　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　JUAN M. RODRIGUEZ
　　　　　　　　　　　　　　　　　　Assistant United States Attorney

　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On three occasions between September and November 2019, defendant Semaj Rufus Hall ("defendant") sold several explosives to a confidential information ("CI"). For his conduct, defendant pleaded guilty to Manufacturing and Dealing in Explosive Materials Without a License, in violation of 18 U.S.C. § 842(a)(1), 844(a)(1).

The government agrees with the Probation Office that defendant's criminal history category is I and his total offense level is 10, after acceptance of responsibility. Moreover, considering the sentencing factors laid out in 18 U.S.C. § 3553(a), the government recommends that Court impose a two-level downward variance, which would further lower the total offense level to 8, and the Guidelines range to 0 to 6 months. Accordingly, for the reasons set forth below, the government recommends that the Court sentence defendant to Probation for a period of three years with the terms recommended by the Probation Office[1], and a $100 special assessment.

**II.  FACTUAL BACKGROUND**

On September 17, 2019, defendant posted an internet ad offering to sell "Fun Paper" for $150. Defendant and the CI communicated online and via text message about defendant's "Fun Paper" and agreed to set up a meeting at a residential location in Inglewood, California. On September 23, 2019, defendant met the CI at the agreed upon location and defendant placed a bag of explosives in the front seat of the CI's car and then collected a cash payment of $150;

---

[1] The government recommends that the Court, at sentencing, incorporate by reference and impose the standard conditions enumerated in the Second Amended General Order 20-04.

the explosives sold by defendant consisted of ten M-1000s, all of which were homemade. An ATF forensic scientist sampled three of the M-1000s and confirmed they contained flash powder, an explosive material. (Dkt. 82 (Presentence Investigation Report ("PSR")), ¶¶ 10-13, 24; Dkt. 77 ("Plea Agreement"), ¶ 13.)

Additionally, between September 23 and October 8, 2019, defendant and the CI communicated via text message and defendant told the CI, "Aye I got a few more plus the big one I'll give you a deal on all of them." Defendant also asked the CI if he had "popped" all ten of the Ml000's that defendant had previously sold the CI. On October 8, 2019, defendant informed the CI that he had explosives to sell for $120 and they agreed to meet at the same location. When the CI arrived at the agreed upon location, an individual holding a cell phone approached the CI's vehicle and told the CI that defendant was on the cell phone. Defendant told the CI that he was running late and directed the individual holding the cell phone to hand over the explosives and to accept the cash payment; the explosives consisted of one large brown homemade explosive and six smaller explosives that had red and white or red, white, and blue coloring. An ATF forensic scientist sampled and confirmed the items contained explosive material. (PSR ¶¶ 14-18, 24; Plea Agreement ¶ 13.)

On November 12, 2019, defendant and the CI communicated again via text message about the purchase of three explosives and eighteen aerial shells for $130. The following day, November 13, 2019, defendant met the CI at the same location. An undercover ATF Special agent, who was accompanying the CI, was seated in the passenger seat of the CI's vehicle. During this meeting, defendant handed the

4

undercover agent a black bag with explosives and aerial shells and the undercover agent paid defendant $130 in cash.  An ATF forensic scientist sampled and confirmed the items contained explosive material and determined their primary purpose was to function by explosion, like the other explosives defendant sold on the other two occasions.  When defendant sold the explosives, defendant was not a licensed dealer or manufacturer of explosives and did not possess a permit either.  (PSR ¶¶ 21-25; Plea Agreement ¶ 13.)

**III. GUIDELINES CALCULATION**

The Probation Office calculated a base offense level of 12 pursuant to U.S.S.G. §2K1.3(a)(5).  (PSR ¶ 30.)  After applying a two-level downward adjustment for acceptance of responsibility, defendant's total offense level is 10.  (PSR ¶¶ 30-41.)  Moreover, the government recommends a two-level downward variance based on the factors set forth in 18 U.S.C. § 3553(a)(1)-(7), including defendant's personal history and characteristics and the unique circumstances of this case.  As set forth in the PSR, defendant grew up surrounded by gang activity and violence; despite this, defendant avoided surrounding himself with negative influences and avoided any involvement with law enforcement given that he did not have a single arrest prior to the underlying conduct.  (PSR ¶¶ 44, 45, 49, 53.) Additionally, after his parents' separation, he moved into an apartment with his mother (and sister) and is the primary caretaker for his aging mother.  (Id. ¶ 54-56.)  Further, defendant appears to be a loving and devoted father who spends time with his daughter when he is not otherwise working.  (Id. ¶¶ 55, 56, 67.)  The United States Probation and Pretrial Services Office has explicitly identified the

foregoing as factors warranting a variance. (Id. ¶¶ 92-93.) With this further decrease, defendant's total offense level would be 8.

The government also agrees with the Probation Office that defendant has zero criminal history points, placing defendant in Criminal History Category I. (Id. ¶¶ 43-49.) With the government's recommended variance, defendant's total offense level is 8 and thus defendant's applicable Guidelines range is 0 to 6 months.

**IV.  THE GOVERNMENT'S SENTENCING RECOMMENDATION**

In light of the mitigating factors in this case, and consistent with its obligations in the plea agreement, the government recommends the Court sentence defendant to Probation for a period of three years and $100 special assessment. The United States Probation and Pretrial Services Office concurs with the government's recommendation. (Dkt. 81.) Such a sentence appropriately balances the history and characteristics of the defendant with the need to reflect the seriousness of the offense, protect the public, deter defendant from further criminal acts, and promote respect for the law.

   **A.   Nature and Circumstances of the Offense**

The nature and circumstances of defendant's offense supports a sentence of Probation. See 18 U.S.C. § 3553(a)(1). On three occasions, defendant manufactured and sold explosives without being a licensed dealer or manufacturer. (Plea Agreement ¶ 13.) That said, defendant did not manufacture explosives or possess large amounts of explosives. There is also no evidence that defendant had been selling explosives for an extended period of time or to individuals seeking to commit crimes with those explosives. Accordingly, despite

the serious nature of the offense, these mitigating circumstances support the government's two-level variance and recommended sentence of Probation.

### B. History and Characteristics of Defendant

Defendant's personal history and characteristics contain several mitigating facts that counsel in favor of a sentence of Probation.

As set forth in the PSR, prior to this conduct, defendant lived a law-abiding life despite growing up in an area filled with gang activity and violence. (PSR ¶¶ 44, 45, 49, 53.)  Moreover, defendant maintains steady employment (including receiving multiple promotions), and provides and cares for his daughter, as well as his mother who he takes to doctor's appointments, in addition to assisting with other errands.  These mitigating facts in defendant's personal history and characteristics support a sentence of Probation.

### C. Need to Reflect Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Deterrence, and Protect the Public

Finally, a sentence of Probation is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public.

This is defendant's first run-in with the law; prior to the underlying conduct, he did not even have an arrest on his record. The Guidelines appropriately account for defendant's past criminal conduct (or lack thereof) by placing him in Criminal History Category I.  Additionally, it is commendable that defendant readily accepted responsibility and that defendant has abided with his pretrial terms and conditions over approximately the past three years.

Finally, a sentence at the low-end of the Guidelines range (i.e., Probation) after taking into account the two-level downward variance will also prevent unwarranted sentencing disparities between this defendant and similarly situated defendants.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010), overruled on other grounds by United States v. Miller, 953 F.3d 1095 (9th Cir. 2020) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity[.]'"); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").  Accordingly, the government submits that, on balance, these factors weigh in favor of a sentence at the low-end of the Guidelines range--Probation.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to Probation for a period of three years with the terms recommended by the Probation Office and a $100 special assessment.